# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

JACQUELYN JOHNSTON,

    Plaintiff,

v.                                            Case No: 6:15-cv-936-Orl-40DAB

GARY S. BORDERS, individually and
in his official capacity, and JENNIFER
FERGUSON,

    Defendants.
_____

## ORDER

This cause comes before the Court on the following:

1. Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 29), filed September 25, 2015;

2. Defendant Jennifer Ferguson's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 30), filed September 25, 2015;

3. Plaintiff's Response in Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 34), filed October 16, 2015; and

4. Plaintiff's Response in Opposition to Defendant Jennifer Ferguson's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 35), filed October 16, 2015.

Upon consideration, Defendants' motions are due to be granted in part and denied in part.

## I. BACKGROUND[1]

Plaintiff, Jacquelyn Johnston, sues Defendants, Gary S. Borders ("Borders"), both in his individual capacity and in his official capacity as the Sheriff of Lake County, Florida, and Jennifer Ferguson ("Ferguson"), the supervisor of Lake County Sheriff's Office Animal Services ("Animal Services"). According to the Amended Complaint, on July 28, 2014, Lake County Sheriff's Office (the "Sheriff's Office") asked Plaintiff to apply for position of Director of Animal Services (Doc. 23, ¶ 12), and on October 1, 2014, Borders hired Plaintiff. (*Id.* ¶ 13). Nine days later, on October 10, 2014, Borders fired Plaintiff. The events surrounding Plaintiff's termination form the basis of this lawsuit against Borders, Ferguson, and the Sheriff's Office.[2] (*Id.* ¶ 14).

Plaintiff alleges that she was terminated after Ferguson, a Kennel Supervisor at Animal Services, lied to her about the situation and policies in place at the shelter during Plaintiff's time as Director and, in doing so, got Plaintiff fired. On October 9, 2014, Ferguson lied to Plaintiff regarding the pre-existing policies at Animal Services on making space for new animals. (*Id.* ¶¶ 33, 37). That day, Ferguson told Plaintiff that more space was needed at the shelter to receive more animals.[3] Ferguson represented to Plaintiff that Ferguson had contacted all foster parents, volunteers, and rescue shelters and had been informed that they were all full. (*Id.* ¶ 39). Plaintiff then directed Ferguson to post a

---

[1] This account of the facts is taken from Plaintiff's Amended Complaint (Doc. 23), the allegations of which the Court must accept as true in considering Defendants' motions to dismiss. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

[2] A suit against Borders in his official capacity is more accurately characterized as a suit against the Lake County Sheriff's Office. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978).

[3] At all times, Plaintiff directed Ferguson to continue to follow all policies that had been in place before Plaintiff became Director. (Doc. 23, ¶ 34).

call for more volunteers and foster homes on social media. (*Id.* ¶ 40). Plaintiff again clarified with Ferguson what the policy was when space was needed at the shelter. (*Id.* ¶ 41). Plaintiff then instructed Ferguson to only euthanize dogs that were aggressive if space was needed per the pre-existing policy. (*Id.* ¶ 44).

Ferguson then told Plaintiff that even with euthanizing the aggressive dogs, more space was needed as there were also dogs being held in outdoor kennels with no shade. (*Id.* ¶ 45). Based on the circumstances, Plaintiff agreed that more space was needed for new animals. (*Id.* ¶ 46). After Plaintiff left for the day, Ferguson "went completely rogue" and euthanized far more animals than necessary. (*Id.* ¶ 51). The Sheriff's Office then led the public to believe that Plaintiff personally euthanized the animals. (*Id.* ¶ 66).

The following day, October 10, 2014, Major Wayne Longo of the Lake County Sheriff's Office called Plaintiff into his office and told her that she was being terminated due to the previous day's events. (*Id.* ¶¶ 68, 69, 73). Plaintiff alleges that the Sheriff's Office forced Plaintiff to take the fall for Animal Services because the Sheriff's Office had been falsifying the number of euthanized animals for years in order to maintain its appearance as a "no kill" shelter. (*Id.* ¶¶ 70–72). Longo explained to Plaintiff that Ferguson had come to him crying and told him that she was ordered by Plaintiff to kill the animals ("Ferguson's Statement"). (*Id.* ¶ 77). The Sheriff's Office also received a number of calls from volunteers and members of the public who were upset that Plaintiff ordered Ferguson to euthanize adoptable animals. (*Id.* ¶ 79). Plaintiff infers that it must have been Ferguson who informed the callers of her version of these events. (*Id.* ¶ 80).

That same day, Borders directed the Sheriff's Office to release a statement regarding Plaintiff's termination. (*Id.* ¶ 15). Borders announced that Plaintiff was terminated after the Sheriff's Office learned that several animals at the shelter were

euthanized despite a policy mandating that animals only be euthanized as a last resort. (*Id.* ¶ 16). Borders was quoted as saying, "This decision was made on our watch and we have taken swift action to ensure it does not happen again." (*Id.* ¶ 17).

On October 11, 2014, on Borders' authorization, the Sheriff's Office released the following statement via its spokesman:

> Our administration was notified by a volunteer at Animal Services that up to 20 animals had been euthanized. Law enforcement, especially, has a healthy respect for animals and what they can contribute, so it's a tough thing to hear. A certain number of them were sick or injured which would be in our policy. But certainly not all of them.

(*Id.* ¶ 18). Then, on October 13, 2014, again at Borders' direction, the Sheriff's Office disseminated the following information to media:

> Johnston was terminated after LCSO learned that 147 animals were euthanized during her time as the Director of LCSOAS, including two (2) cats and eighteen (18) dogs in one day. All but six of those animals were put down for legitimate reason including, but not limited to, aggression, sickness and injuries. Some of the animals were put down prematurely because the shelter was not yet at capacity even though Johnston gave the reason for euthanizing the animals as limited space. Johnston did not exhaust all the resources to save the animals and exercised bad judgment. Borders wants the shelter to be as close to a no-kill shelter as possible. Because the killings happened on Johnston's watch, it was her responsibility. Johnston made a bad call and euthanized some dogs that could have made good pets for people. That's why we took the action we did, to make sure something like this doesn't happen again.

(*Id.* ¶ 19). Plaintiff alleges that the numbers of animals euthanized during her short tenure were not put into perspective and "were intended to destroy [Plaintiff's] reputation and to bolster the reputation of Borders in his takeover of [Animal Services]." (*Id.* ¶¶ 20–22).

Following the release of these statements, media across the United States and London reported on the story and published Plaintiff's photograph. (*Id.* ¶¶ 23, 24).

Subsequently, Plaintiff received death threats on the Internet, including her Facebook page. (*Id.* ¶¶ 25, 26). Plaintiff states that these false statements and statistics, without a reference point, ruined her career and put her and her family in danger. (*Id.* ¶ 27). She is now unable to find employment. (*Id.* ¶¶ 28, 29).

Plaintiff initiated this action on June 9, 2015. Count I of the Amended Complaint asserts a § 1983 claim for due process violation(s) against Borders in his individual and official capacities. Count II asserts a claim for slander per se against Ferguson and Borders in his official capacity. Count III asserts a claim for slander against Ferguson and Borders in his official capacity. Count IV asserts a libel per se claim against Ferguson and Borders in his official capacity. Count V asserts a libel claim against Ferguson and Borders in his official capacity. Count VI asserts a claim for defamation by implication against Borders in his official capacity. Count VII asserts a claim for conspiracy in violation of 42 U.S.C. § 1985 against all Defendants. Lastly, Count VIII asserts a claim for the violation of 42 U.S.C. § 1986 against all Defendants. Borders now moves to dismiss Counts I, VII, and VIII and Ferguson moves to dismiss Counts II through VIII for failing to state claims for relief.

## II. STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1). Thus, in order to survive a motion to dismiss made pursuant to Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the plaintiff "pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Though a complaint need not contain detailed factual allegations, mere legal conclusions or recitation of the elements of a claim are not enough. *Twombly*, 550 U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts must also view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994).

## III. DISCUSSION

### A. Borders' Motion to Dismiss

Borders moves to dismiss Count I against him in his individual capacity and Counts VII and VIII against him in his official capacity.

#### 1. Count I: 42 U.S.C. § 1983

In Count I, Plaintiff brings a claim for violation of her procedural due process[4] rights under the Fourteenth Amendment to the United States Constitution against Borders in his individual and official capacities. Plaintiff alleges that "Borders personally, maliciously, and under color of state law deprived Plaintiff of her liberty interest in her good name, reputation, honor, and integrity." (Doc. 23, ¶ 130). Plaintiff further alleges that she has a constitutionally protected liberty interest "in remaining free of false, stigmatizing dissemination to the public in connection with her termination without receiving any

---

[4] While Plaintiff is not entirely clear in her Amended Complaint whether her claim is for a procedural or substantive due process violation, she states in her response to Borders' motion to dismiss that her claim in Count I is for the former violation. (Doc. 34, p. 4).

6

meaningful opportunity to clear her name" and "in living and working where she chooses in her chosen profession and to engage in the common occupations of life." (*Id.* ¶¶ 131, 132). By virtue of Borders' statements, Plaintiff was deprived of her ability to work and make a living. (*Id.* ¶ 133). Plaintiff also brings Count I against Borders in his official capacity. In this regard, Plaintiff alleges that the Sheriff's Office was required to provide her "an opportunity for a name-clearing hearing," which it failed to do. (*Id.* ¶¶ 136, 137). Borders only moves to dismiss the individual capacity claim in Count I.

First, Borders argues that Count I should be dismissed against him in his individual capacity because he is entitled to absolute immunity from defamation claims based on communications made within the scope of his employment. However, Count I is not a defamation claim against Borders. Plaintiff responds that while absolute immunity protects Borders against defamation claims, it does not serve to protect him against a claim under § 1983 for violation of her due process rights, and this Court agrees.[5]

Next, Borders asserts that he is entitled to qualified immunity under Count I. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted). "Once the defendant establishes that he was acting within his discretionary

---

[5] The case law cited by Borders in his motion to dismiss address the defense of absolute immunity in the context of defamation claims, not § 1983 claims. *See, e.g., Boggess v. Sch. Bd. of Sarasota Cty.*, No. 8:06-CV-2245-T-27EAJ, 2008 WL 564641, at *5 (M.D. Fla. Feb. 29, 2008).

authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.* Here, the parties do not dispute that Borders was acting within his discretionary authority when he made the alleged negative statements about Plaintiff.

The burden then shifts to Plaintiff, who must make a two-part showing. First, she must demonstrate that the facts of the case make out a violation of a constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Beshers v. Harrison*, 495 F.3d 1260, 1265 (11th Cir. 2007). Second, she must demonstrate that the constitutional right was "clearly established" at the time of the alleged misconduct.[6] *Pearson*, 555 U.S at 223. "When conducting a qualified immunity analysis, district courts must take the facts in the light most favorable to the party asserting the injury." *Robinson v. Arrugueta*, 415 F.3d 1252, 1257 (11th Cir. 2005). This construction "eliminates all issues of fact" such that "the court has the plaintiff's best case before it." *Id.*

As to the first prong, the Court finds that Plaintiff has alleged facts that demonstrate the violation of a constitutional right. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). However, "the range of interests protected by procedural due process is not infinite." *Id.* at 570. The Supreme Court has recognized that when "a person's good name, reputation, honor, or integrity is at stake" because of government action, "notice and an

---

[6] The Court may address the prongs of the qualified immunity inquiry in any order, although the United States Supreme Court encourages courts to address the constitutional violation prong first so as to develop a body of clearly established law on the often fact-specific inquiries that arise in the context of § 1983 claims. *See Pearson*, 555 U.S. at 236 ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

opportunity to be heard are essential." *Id.* at 573 (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)). Therefore, "when reputational damage is sustained in connection with a termination of employment, it may give rise to a procedural due process claim for deprivation of liberty . . . under § 1983." *Cotton v. Jackson*, 216 F.3d 1328, 1330 (11th Cir. 2000) (per curiam). "To recover, a plaintiff must satisfy a six-factor test and show that (1) a false statement, (2) of a stigmatizing nature, (3) attending a governmental employee's discharge, (4) [was] made public, (5) by the governmental employer, (6) without a meaningful opportunity for an employee name clearing hearing." *Id.* (quoting Warren v. Crawford, 927 F.2d 559, 565 (11th Cir. 1991)).

Here, Plaintiff has alleged that her reputation and integrity were jeopardized due to the false statements made by Borders and the Sheriff's Office to the general public surrounding Plaintiff's termination. She further alleges that she was not given an opportunity to clear her name after these statements were made. Consequently, Plaintiff has set forth facts establishing a prima facie case for violation of a constitutional right.

As to the second prong, the Court finds that the constitutional right was "clearly established" at the time of the alleged misconduct. *See Roth*, 408 U.S. at 569. For purposes of qualified immunity, a right is clearly established where "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wilson v. Layne*, 526 U.S. 603, 614–15 (1999) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Moreover, the right that was allegedly violated must have been "defined at the appropriate level of specificity before a court can determine if it was clearly established." *Id.* at 615. The Court finds that making false statements of a stigmatizing nature regarding Plaintiff's termination and failing to provide

9

a name clearing hearing is clearly established law. *See Roth*, 408 U.S. at 569. Therefore, at this stage of the litigation, qualified immunity is due to be denied.

### 2. Count VII: 42 U.S.C. § 1985(3)

Plaintiff brings a claim against all Defendants pursuant to 42 U.S.C. § 1985(3). Plaintiff alleges that Defendants conspired to injure her by ruining her professional reputation in making and publishing false statements about her. (Doc. 23, ¶ 177). By making these statements, Plaintiff claims that Defendants have deprived her of her right to make a living and have permanently damaged the public's perception of her. (*Id.* ¶¶ 178, 180).

To state a claim under § 1985(3), a plaintiff must establish the following six elements:

> (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Childree v. UAP/GA AG CHEM, Inc.*, 92 F.3d 1140, 1146–47 (11th Cir. 1996), *cert. denied*, 519 U.S. 1148 (1997). As to the second element, "a plaintiff must allege that some racial or other 'class-based invidiously discriminatory animus lay behind the conspirators' action.'" *Barth v. McNeely*, 603 F. App'x 846, 850 (11th Cir. 2015) (per curiam) (quoting *Childree*, 92 F.3d at 1146–47), *cert. denied*, 136 S. Ct. 217 (2015); *see also Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1340 (11th Cir. 1999) (en banc). Here, Plaintiff includes no allegations in her Complaint to satisfy this requirement.[7] Thus, Count VII is due to be

---

[7] Borders and Ferguson base their argument for dismissal of Count VII on the argument that the claim is barred by the doctrine of intra-corporate conspiracy. However, the

dismissed. However, because Plaintiff has not had an opportunity to amend this claim, the Court will allow Plaintiff to amend her complaint as to this claim, if appropriate.

### 3. Count VIII: 42 U.S.C. § 1986

Plaintiff also brings a claim against all Defendants pursuant to 42 U.S.C. § 1986. However, "[t]he text of § 1986 requires the existence of a § 1985 conspiracy." *Park v. City of Atlanta*, 120 F.3d 1157, 1160 (11th Cir. 1997) (per curiam). Because the Court has determined that Plaintiff's § 1985(3) claim should be dismissed, Count VIII is also due to be dismissed. As with Count VII, the Court will allow Plaintiff to amend her complaint as to this claim, if appropriate.

### B. Ferguson's Motion to Dismiss

Ferguson moves to dismiss Counts II through V.[8] Ferguson also moves to dismiss Counts VII and VIII which the Court has previously determined are due to be dismissed. Counts II and III assert claims for slander per se and slander, respectively, and Counts IV and V assert claims for libel per se and libel, respectively.

First, Ferguson argues that Counts II through V should be dismissed because the allegedly defamatory statements were made in the course of her official duties and that she is therefore entitled to absolute immunity. Florida Statute § 768.28(9)(1) provides immunity from suit in tort to a state employee if that employee was acting within the scope of his or her employment and does not act in bad faith, with a malicious purpose, or in a manner exhibiting wanton and willful disregard.

---

Court need not reach this argument as Plaintiff has failed to plead facts to establish all the elements of a § 1985 cause of action.

[8] Ferguson also moves to dismiss Count VI; however, Count VI is not brought against her. Count VI asserts a claim for defamation by implication only against Borders in his official capacity.

11

Ferguson argues that she is entitled to absolute immunity because Plaintiff's allegations that Ferguson was acting in bad faith and outside the scope of her employment when the alleged defamatory statements were made are merely legal conclusions. Plaintiff responds that she has alleged numerous facts regarding Ferguson's motive to lie and disobey Animal Services' policy, as well as Florida law, and that these facts demonstrate that Ferguson should not be entitled to immunity at this stage of the litigation. (*See* Doc. 23, ¶¶ 83–117). The Court agrees with Plaintiff. Plaintiff details how Ferguson had previously been the interim Director before Plaintiff was hired and wanted this position back. (*Id.* ¶ 84). While Plaintiff was Director, she exposed that Ferguson was running the shelter improperly. (*Id.* ¶¶ 91, 99). After ousting Plaintiff, Ferguson resumed her position as interim Director at the shelter. (*Id.* ¶ 118). At this stage of the proceedings, Plaintiff has set forth enough facts to establish that Ferguson had a bad faith motive connected to making her defamatory statements to Longo, volunteers, and the general public. Therefore, absolute immunity is due to be denied.

Next, Ferguson moves to dismiss Counts II through V for failure to state a claim. To state a claim for defamation, a plaintiff must allege the following: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). A cause of action for slander is confined to defamatory spoken words; on the other hand, a cause of action for libel is confined to defamatory written words. *See Thompson v. Orange Lake Country Club, Inc.*, 224 F. Supp. 2d 1368, 1376 (M.D. Fla. 2002).

Ferguson argues that each of Plaintiff's claims lack the publication element necessary to state a claim because Ferguson's only statement about Plaintiff was made to Longo, a member of Ferguson's organization. "A defamatory statement does not become actionable . . . until it is published or communicated to a third person . . . ." *Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. Dist. Ct. App. 2007) (per curiam). However, Plaintiff also alleges that Ferguson made a defamatory statement about Plaintiff to at least one unnamed volunteer or member of the general public. (Doc. 23, ¶ 80). Plaintiff bases this allegation on the fact that the Sheriff's Office received multiple calls from volunteers and members of the general public around the time of Plaintiff's termination who were upset that Plaintiff had ordered animals to be euthanized. (*Id.* ¶ 79). Plaintiff reasons that the only way anyone would have known about Ferguson's version of events is if Ferguson made defamatory statements about Plaintiff to them. (*Id.* ¶ 80). This is enough to state a prima facie claim for defamation.

Lastly, Ferguson argues that Plaintiff's claims for libel and libel per se should be dismissed because the Amended Complaint fails to allege facts demonstrating that Ferguson published a defamatory statement in writing. Plaintiff responds that it is unclear how Ferguson published her statements to the aforementioned volunteers or members of the general public and that this could have been done by social media or some other electronic means of communication in writing. Because it is unknown whether Ferguson's alleged defamatory statements to the volunteers or members of the general public where spoken, written, or both, the Court will not dismiss the claims of libel and libel per se at this juncture.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 29) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. Counts VII and VIII are **DISMISSED WITHOUT PREJUDICE**.

    b. The remainder of the motion is **DENIED**.

2. Defendant Jennifer Ferguson's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 30) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. Counts VII and VIII are **DISMISSED WITHOUT PREJUDICE**.

    b. The remainder of the motion is **DENIED**.

3. Plaintiff shall file a Second Amended Complaint, if appropriate, as to Counts VII and VIII **on or before May 16, 2016**.

4. Defendants shall respond to Plaintiff's Amended Complaint, or Second Amended Complaint in the event one is filed, **on or before May 23, 2016**.

**DONE AND ORDERED** in Orlando, Florida on May 9, 2016.

*[Signature]*
PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record