**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

JACQUELYN JOHNSTON,

    Plaintiff,

v.                                                    Case No: 6:15-cv-936-Orl-40DCI

GARY S. BORDERS and JENNIFER
FERGUSON,

    Defendants.
_____/

## **ORDER**

This cause is before the Court on Plaintiff Jacquelyn Johnston's Rule 50 Motion, or, alternatively, Motion for Pre-Trial Determination of Jury Instructions. (Doc. 155 (the "**Motion**")). The Defendants have submitted their Response in Opposition. (Doc. 160).

**I.    BACKGROUND**[1]

The pertinent procedural history is as follows: On January 11, 2017, this Court granted summary judgment in favor of Defendants on Plaintiff's § 1983 claim, finding that Plaintiff failed to exhaust her state court remedies before initiating this action. (Doc. 98). The Court declined supplemental jurisdiction over the remaining state law claims. (*Id.*). The Eleventh Circuit Court of Appeals reversed, finding that there were no adequate state remedies available to Plaintiff. (Doc. 107).

The Eleventh Circuit observed that "[b]ecause this is an appeal from summary judgment, we recount the evidence below in the light most favorable to Johnston, the non-movant." (Doc. 107, p. 2 (citing *Buxton v. Plant City*, 871 F.2d 1037, 1040 (11th Cir.

---

[1]    A detailed discussion of the facts of this dispute may be found at Docket Entry 133.

1989))). After summarizing the relevant facts, the Court of Appeals conducted a detailed analysis of the elements of a § 1983 claim alleging a liberty interest deprivation. (Doc. 107, pp. 6–7). Thereafter, the Eleventh Circuit applied the facts presented in the motion for summary judgment to the elements of the § 1983 claim and concluded that a genuine issue of material fact exists which warrants trial on the merits. (*Id.* at pp. 7–11). Next, the court found that Sheriff Borders is not entitled to qualified immunity, having construed the evidence of a constitutional violation in the light most favorable to Johnston. (*Id.* at p. 12).

## II. THE ISSUES

Plaintiff's Motion raises three issues for this Court's consideration:

> 1. Whether the § 1983 claim for deprivation of a liberty interest—at least as relates to Sheriff Borders' conduct in his official capacity—requires Plaintiff to identify a municipal policy or custom that caused Plaintiff's injury;[2]
>
> 2. Whether the Eleventh Circuit's opinion, from the perspective of law of the case, has established that the "without a meaningful opportunity for an employee name-clearing hearing" elements of the deprivation of liberty claim has been proven; and
>
> 3. Whether this Court's finding that Plaintiff Johnston was not a "public official" as stated in Court's order at Docket Entry 133 is an issue of law that has been finally decided thereby foreclosing Defendant Ferguson from arguing that actual malice must be proved by Plaintiff.

(Doc. 155, pp. 2–3, 10).

## III. DISCUSSION

Rule 50(a) of the Federal Rules of Civil Procedure provides that:

> (1) *In General.* If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury

---

[2] A related issue is whether Defendants should be estopped from adding an element to the § 1983 claim which was not listed in the Joint Pretrial Statement filed by the parties on December 27, 2016. (Doc. 155, p. 3).

2

would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

> (A) resolve the issue against the party; and
>
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
>
> (2) *Motion*. A motion for judgement as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

Fed. R. Civ. P. 50(a).

The Court is unaware of any Eleventh Circuit law holding that a Rule 50 motion may be brought before a jury has been selected and prior to the presentation of evidence. To the contrary, the Eleventh Circuit held in *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001), that "[a] party's motion for judgment as a matter of law can be granted at the close of the evidence or, if timely renewed, after the jury has returned its verdict, as long as 'there is no legally sufficient evidentiary basis for a reasonable jury to find' for the non-moving party."[3] Accordingly, Rule 50 relief is not available at this juncture. The Court is of the opinion, however, that Plaintiff's motion should be construed as a motion *in limine* to set forth the trial court's understanding of the Eleventh Circuit's opinion and to provide guidance to the parties.

---

[3] A renewed motion for judgment as a matter of law under Rule 50(b) must be premised on the same grounds as a prior Rule 50(a) motion submitted at the close of the evidence and before the case was submitted to a jury. *Chaney v. City of Orlando, Fla.*, 483 F.3d 1221, 1228 (11th Cir. 2007).

### A. The Elements of § 1983 Deprivation of Liberty Interest Claim

Plaintiff Johnston sued Defendant Sheriff Borders in his individual capacity and in his official capacity as Sheriff of Lake County. (Doc. 23, p. 1). Suing a county official in his official capacity is "another way of pleading an action against an entity of which an officer is an agent." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Sheriff Borders moved for summary judgment on the § 1983 claim leveled against him. (Doc. 60). Plaintiff filed a cross-motion for summary judgment on the § 1983 claim. (Doc. 63). The Eleventh Circuit was well-aware that summary judgment had been granted by this Court in favor of Sheriff Border in both his individual and official capacity.[4] The Eleventh Circuit, quoting *Buxton v. Plant City*, 871 F.2d 1037, 1040 (11th Cir. 1989), addressed the elements of a § 1983 deprivation of liberty interest claim, listing the six elements comprising the claim as follows:

> To establish that Sheriff Borders deprived her of a liberty interest, Johnston must prove: '(1) a false statement (2) of a stigmatizing nature (3) attending [her] discharge (4) made public (5) by [her] government employer (6) without a meaningful opportunity for employee name clearing.'

(Doc. 107, p. 7).

Defendant Borders now contends that "[t]o the extent Plaintiff seeks to hold the Sheriff's Office liable for the failure of Sheriff Borders or any other Sheriff's Office employee to provide Plaintiff with a name clearing hearing . . . , she must also prove, as an element of her § 1983 claim against the Sheriff's Office, that an official policy or custom

---

[4] This Court's order granting summary judgment as to Count One states: "In Count I, Johnston brings claims against Sheriff Borders, in both his individual and official capacities, pursuant to 42 U.S.C. § 1983 for deprivation of her liberty interests without due process of law." (Doc. 98, p. 8).

4

of the Sheriff's Office directly caused Johnston's injuries." (Doc. 160, p. 3). The Defendant cites *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978), in support of this proposition. (*Id.* at pp. 3–4).[5]

In *Buxton*, cited by the Eleventh Circuit in their opinion reversing this Court, a police officer was discharged from his position and sued the chief of police, the city manager, and the city under § 1983 for a liberty deprivation caused by the failure to afford him a name clearing hearing. *Buxton*, 871 F.2d at 1040. The Eleventh Circuit set forth six (6) elements required to establish this constitutional violation. *Id.* at 1042. Notably absent from the six (6) element test set forth in *Buxton* was the requirement that plaintiff prove that an official policy or custom of the municipality directly caused the plaintiff's injuries. The Eleventh Circuit is well-aware of *Monell* and its progeny; yet, the Court omitted the "policy, custom, or usage" language from its analysis of the elements of a § 1983 deprivation of liberty claim. The defense suggests this oversight is driven by the fact that neither party raised *Monell* in their summary judgment briefing. (Doc. 160, p. 4). This is akin to arguing that in an action sounding in tort, the Eleventh Circuit in identifying the elements of that claim would omit duty, or breach, or causation from its analysis simply because neither party contests that element. This makes no sense, and this Court operates from the premise that the Eleventh Circuit knows how to identify the elements of a claim and does not intentionally omit essential elements.

---

[5] In *Monell* the Supreme Court of the United States held that "a municipality cannot be held liable" solely for the acts of others, *e.g.,* "*solely* because it employs a tortfeasor." 436 U.S. at 691 (emphasis added). But a municipality may be held liable "when execution of a government's *policy or custom* . . . inflicts the injury." *Id.* at 694.

5

The absence of *Monell* liability from the Eleventh Circuit's opinion in this case, and in *Buxton* is consistent with the holding of *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397 (1997), where the Supreme Court found that where "fault and causation were obvious . . . , proof that the municipality's decision was unconstitutional would suffice to establish that the municipality itself was liable for the plaintiff's constitutional injury." *Id.* at 405. In *Brown*, the Supreme Court cited *Owen v. Independence*, 445 U.S. 622 (1980), as an example. 520 U.S. at 405–06. In *Owen*, the city council was accused of having censured and discharged an employee without a hearing. *Id.* at 406. While the city council's decision did not reflect "implementation of a generally applicable rule," the Court held the decision "could trigger municipal liability if the decision itself were found to be unconstitutional." *Id.*[6]

The Eleventh Circuit, in cases involving potential municipal liability, established six (6) elements for a § 1983 deprivation of liberty interest claim. The Court's pronouncement in this case is consistent with its approach in *Buxton*, and this Court declines to add additional elements of proof not required by the appellate court.[7]

Plaintiff Johnston next argues that the "parties are bound by their stipulation and a pretrial stipulation frames the issues for trial." (Doc. 155, p. 4). Nearly two years ago, on December 27, 2016, the parties submitted their Joint Pretrial Statement. (Doc. 81). Under Section IX (Agreed Principles of Law), the parties agreed that the six (6) elements

---

[6] While it has not been briefed by the parties, the *Monell* custom or policy analysis is not applicable where the offending conduct is undertaken by the final policymaker with respect to the subject at issue—here, Sheriff Border. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1292 (11th Cir. 2004).

[7] *See also Cotton v. Jackson*, 216 F.3d 1328 (11th Cir. 2000) cited by the Defendant in his summary judgment motion and establishing the same six (6) elements for a § 1983 deprivation of liberty interest claim.

6

announced in *Buxton* and *Cotton* are the only elements required for Plaintiff to prevail on her § 1983 claim. (*Id.*). Defendant contends the Joint Pretrial Statement is not binding because the Plaintiff "appears to be pursuing a theory of *respondeat superior* and because the joint pretrial statement may be amended prior to trial." (Doc. 160, p. 4). This argument fails for two reasons: first, the parties continue to be guided by the same operative complaint that was in effect when they entered into the stipulation; second, a party may not unilaterally amend a joint pretrial statement. This is because "pretrial stipulations promote judicial economy by dispensing with matters that are not at issue." *Regions Bank v. Kaplan*, No. 8:16–cv–2867, 2018 WL 2197771, at *3 (M.D. Fla. May 14, 2018) (citation omitted). Accordingly, the Local Rules of this Court provide that "[t]he pretrial statement and the pretrial order, if any, will control the course of the trial and may not be amended except by an order of the Court in furtherance of justice." M.D. Fla. Local Rule 3.06(e). An amendment to the stipulation should not be permitted if the opposing party would be unfairly prejudiced. *Kaplan*, 2018 WL 2197771, at *3.

Assuming Defendant Borders is correct that the *Monell* custom or policy element is required to impose liability against the Sheriff in his official capacity, Plaintiff Johnston would be gravely prejudiced by allowing such a significant alteration in the pretrial statement at this late juncture. Discovery closed long ago, and trial commences on October 1, 2018. Plaintiff Johnston has prepared her case based on the understanding that her § 1983 claim has six (6) elements. She has relied upon this stipulation in preparing her case. Moreover, even at this late date, Defendant Borders has failed to seek leave to amend the pretrial stipulation. The parties entered into a binding stipulation,

7

and the Court will not revisit that matter. The jury will be instructed on the six (6) elements of the § 1983 claim identified by the Circuit Court.

**B. Whether the Circuit Court held that the "without a meaningful opportunity for an employee name-clearing hearing" elements of the deprivation of liberty claim has been proven?**

In *Campbell v. Pierce County*, 741 F.2d 1342 (11th Cir. 1984), a § 1983 action was commenced by the former Assistant Clerk to the Board of Commissioners of Pierce County against the board. *Id.* at 1343–44. On appeal of summary judgment in favor of the county, the Eleventh Circuit held that where a liberty interest arising from reputational damage is implicated, the state must "make known to the stigmatized employee that [she] may have an opportunity to clear [her] name upon request." *Id.* at 1345 (quoting *In re Selcraig*, 705 F.2d 789, 796 (5th Cir. 1983)). The court emphasized that "[w]hile the features of such a hearing . . . have been prescribed with substantial flexibility, courts have required that the claimant have notice of the charges which have been raised against [her], and *an opportunity to refute, by cross-examination or independent evidence*, the allegations which gave rise to the reputational injury." *Id.* (emphasis added) (citation omitted).

### 1. Notice of Name-Clearing Hearing

In their response to Plaintiff's motion for summary judgment, the defense conceded that Plaintiff Johnston was not give formal notice of a post-termination name clearing opportunity. (Doc. 68, p. 5). Moreover, the Circuit Court observed in their opinion remanding the case that "Sheriff Borders admitted that he did not know what a name clearing hearing was." (Doc. 107, p. 8). Judicial estoppel protects the integrity of the courts by preventing a litigant from contradicting its previous, inconsistent position when a court has adopted and relied on it. *Boyte v. Lionhead Holdings*, No. 3:10–CV–1467–D, 2012

WL 2680022, at *5 (N.D. Tex. July 6, 2012). The Eleventh Circuit in *Campbell* clearly held there is an absolute duty to advise the aggrieved employee that she may have a name-clearing hearing at her request. Defendant Borders admits that he failed to advise Plaintiff Johnston of this right and may not now argue to the contrary. *See Anderson v. Brown Indus.*, 614 F. App'x 415, 417–19 (11th Cir. 2015) (per curiam) (plaintiff estopped from arguing at trial that his alleged harasser was his supervisor and later arguing in post-trial motions the alleged harasser was not his supervisor).[8]

### 2. Release of Plaintiff's Complaint Letter

The Defendant argued in his motion for summary judgment that, notwithstanding the lack of notice of the right to a name-clearing hearing, Plaintiff received due process because her attorney's complaint letter was released in response to a media request. (Doc. 60, p. 13). In finding that a genuine dispute as to whether Johnston had a meaningful opportunity to clear her name, the Eleventh Circuit held that "releasing her complaint letter in response to a media request . . . was not a 'meaningful opportunity for employee name clearing.'" (Doc. 107, p. 8). The Court reasoned that "Johnston had no opportunity to cross-examine adverse witnesses or rebut their claims." (*Id.*) Defendant correctly notes that the law of the case doctrine bars consideration of legal issues that were decided in the former proceeding. (Doc. 160, p. 4).[9] While certain factual findings contained in the Circuit Court's opinion are qualified as they were construed in the light

---

[8] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

[9] *See Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1283 (11th Cir. 2005).

most favorable to Plaintiff, here the Circuit Court examined undisputed facts–the publication of Plaintiff's complaint letter–and found the publication is, as a matter of law, inadequate because "Johnston had no opportunity to cross-examine adverse witnesses or rebut their claims." (Doc. 107, p. 8). Contrary to Defendant Borders' assertion that the jury may give different weight to this evidence, (Doc. 160, p. 7), the Eleventh Circuit has concluded that such action does not constitute a meaningful opportunity to clear one's name. A jury is not free to disagree with the application of these undisputed facts to the law. Accordingly, Defendants may not argue that publishing the complaint letter constitutes a meaningful opportunity for Johnston to clear her name.

### 3. Other Name-Clearing Opportunities

Defendant asserted that Plaintiff received a meaningful name-clearing opportunity, including her interview by Major Longo during which she was confronted with her alleged misdeeds and asked to explain herself, (Doc. 60, p. 13), and an investigation by the Sheriff's Office of Johnston's formal complaint letter. (*Id.*). While Defendant avers he raised the alternative name-clearing opportunities in his Answer Brief at the Eleventh Circuit, (Doc. 160, p. 7), the Circuit did not address these "opportunities" in its opinion. This Court is guided by the clear and unambiguous language contained in the Eleventh Circuit's opinion that a meaningful opportunity to clear one's name demands the chance to cross-examine adverse witnesses and rebut their claims. The record makes clear that neither the meeting with Major Longo nor the investigation by the Sheriff's Office provided Plaintiff the opportunity to cross-examine the witnesses against her or the rebut their claims. Defense counsel shall be prepared to proffer to the Court before opening statements the evidence they intend to present establishing that either or both of these

name-clearing opportunities comports with the minimum standard established by the Eleventh Circuit.[10]

### C. Whether Plaintiff Johnston is a Public Official?

Following remand by the Circuit Court, this Court entered an order resolving the motions for summary judgement directed to the state-law claims. (Doc. 133). After reviewing the record evidence presented by the parties on the issue of whether Plaintiff Johnston was a public official and viewing the evidence in the light most favorable to Plaintiff, the Court concluded she was not acting as a public official. (*Id.* at p. 13). Defendant Ferguson is correct that the Court's finding is based upon the evidence presented by the parties in the context of summary judgment, and it is possible that additional evidence may be presented during the trial on this issue. The defense correctly observes that the district court and not the jury decides whether the Plaintiff is a public official. *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) (citing *Brewer v. Memphis Pub. Co.*, 626 F.2d 1238, 1247 (5th Cir. 1980)). Accordingly, the Court will resolve this issue at the close of the evidence. [11]

---

[10] The Court has carefully reviewed *Dressler v. Jane*, 87 F. Supp. 2d 1308 (S.D. Fla. 2000) and declines to follow the reasoning and holding of that district court. The district court in *Dressler* announces a *de minimis* approach to satisfying due process whereby virtually any opportunity to respond—no matter how truncated—is sufficient. The holding in *Dressler* contradicts the Eleventh Circuit analysis in the instant case and in *Campbell*.

[11] The parties do not ask the Court to opine whether Plaintiff failed to exhaust available state remedies, likely because of the Eleventh Circuit's clear holding that no state remedies were available to Johnston. (Doc. 107, pp. 9–11). Similarly, the Circuit Court resolved against Sheriff Borders the defense of qualified immunity. (*Id.* at pp. 11-12).

**DONE AND ORDERED** in Orlando, Florida on August 31, 2018.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties