# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

JACQUELYN JOHNSTON,

    Plaintiff,

v.                                                            Case No: 6:15-cv-936-Orl-40DCI

GARY S. BORDERS and JENNIFER FERGUSON,

    Defendants.
_____/

## ORDER

This cause is before the Court on Plaintiff Jacquelyn Johnston's Motion for Sanctions for Discovery Violations and For Violations of Fed. R. Civ. P. 11. (Doc. 161). Defendants Borders and Ferguson have submitted their Response in Opposition, (Doc. 164), and Plaintiff has filed her Reply. (Doc. 169). Upon due consideration of the pleadings, Plaintiff Johnston's motion is denied.

## I. BACKGROUND

### A. Discovery Deadline

The pertinent procedural history is straightforward. Plaintiff filed her Complaint on June 9, 2015, (Doc. 1), and her Amended Complaint on September 11, 2015. (Doc. 23). In due course, the Court issued a Case Management and Scheduling Order. (Doc. 26). Upon an unopposed motion of Defendants, the Court amended the scheduling order and, in part, extended discovery through July 1, 2016. (Docs. 40, 46). The parties thereafter submitted a joint motion to modify the scheduling order (Doc. 50), and the Court granted that motion, moving the deadline for completion of discovery to September 2, 2016. (Doc.

52). The second motion for modification of the scheduling order was filed on June 16, 2016. (Doc. 50).

## B. The Euthanasia Form

On June 9, 2016, Major Wayne Longo was deposed by Plaintiff's counsel. (Doc. 161, p. 3). The record is silent as to whether Plaintiff had attempted to schedule Major Longo's deposition prior to June 9, 2016. Simple math teaches that Major Longo's deposition was conducted nine (9) months after Plaintiff filed her Amended Complaint. At his deposition, Major Longo produced a Euthanasia Form, which is at the heart of the current dispute. (*Id.*). By all accounts, June 9, 2016 is the first time Plaintiff's counsel laid eyes on the Euthanasia Form. (*Id.*).[1] It was readily apparent to counsel for both parties that the Euthanasia Form contained white out where the words "No Space" appeared five (5) separate times. (Doc. 161, p. 3; Doc. 164, p. 4).

Major Longo testified at deposition that he received the Form from Diane Hagan. (Doc. 161, p. 2, quoting Longo Depo. 17:18-19). Ms. Hagan's deposition was set for June 30, 2016, and on June 24, 2016 Plaintiff's counsel asked Defendants' counsel to bring the original Euthanasia Form to Ms. Hagan's deposition. (*Id.* at 4). Plaintiff's counsel communicated this request to Defendants' lawyer as follows:

> Attached please find Notices and Subpoenas for Diane Hagan and Cynthia Williams. For the purposes of inspection and Diane's deposition, we would like the original of the attached 10/9/14 Euth Reason Log.

---

[1] Plaintiff argues that her counsel did not become aware of this form in connection with Defendants' Rule 26 disclosures. (*Id.*). Neither party has submitted Defendants' Rule 26 disclosures; however, Defendants contend their disclosure identified "Documents related to Plaintiff's termination" as a category of documents pertinent to the reasons for Plaintiff's termination. (Doc. 164, p. 10). It is not clear whether Defendants produced these documents to Plaintiff or made them available for inspection.

> On the copy produced there seems to be items that had been whited out and written over top of in a different ink and accordingly, we would like to inspect the original and ask Ms. Hagan questions about it since testimony has been given that she is the only one that wrote on the document.

(Doc. 161, p. 5).[2]

Five days after Plaintiff's email, counsel for the Defendants' replied to the request for production of the original Euthanasia Form:

> We have already produced the document. If you think it's been altered, you can certainly inquire about it at Ms. Hagan's deposition. If you would still like to view the original after her deposition, we will make the original available for you to view at the Sheriff's Office.

(*Id.*). According to counsel for the Defendants, Plaintiff's counsel did not coordinate with them to inspect the original form before the close of discovery on September 2, 2016. (Doc. 164, p. 2). Plaintiff does not challenge the accuracy of this fact.

### C. Post-Remand Informal Discovery

On January 11, 2017, this Court granted Defendants' Motion for Summary Judgment. (Doc. 98). The Eleventh Circuit Court of Appeals reversed this Court on April 14, 2018. Following remand, Plaintiff picked up her pursuit of the original Euthanasia Form and sent an e-mail on July 5, 2018 to Defendants' counsel to schedule inspection of the form. (Doc. 161, p. 6). The following day, Defendants' counsel agreed to produce the original form for inspection. (*Id.*).

On July 13, 2018, Defendants' counsel informed Plaintiff that the Euthanasia Form may have been sent to the County and offered to stipulate that the form contained white out in certain places consistent with Ms. Hagan's deposition. (Doc. 164, p. 8). On July 19,

---

[2] Plaintiff apparently did not issue a subpoena *duces tecum*, because insufficient time remained between the deposition of Major Longo and the upcoming Hagan deposition.

3

2018, following the pretrial conference, Plaintiff's counsel was advised that the original form had been located. (Doc. 161, p. 7). The original form was inspected by the Plaintiff on August 2, 2018, and the parties agree that beneath the white out the word "Behavior" is written. (*Id.*). A hotly contested issue is whether dogs held in the shelter had been euthanized to make more space or for behavioral issues.

## II.  THE ISSUES

Plaintiff claims Defendants' counsel intentionally failed to produce the original form at an earlier stage in the litigation to prevent Ms. Johnston from learning that the form had been altered to reflect dogs were euthanized to make space—as opposed to euthanized for behavioral issues—which justified her termination and resulted in her nearly universal public condemnation. (Doc. 161, pp. 7-10). Plaintiff further argues that Defendants' Answer and Affirmative Defense in which they contend the statements made to the media were true amounts to a Rule 11 violation, as the Euthanasia Form negates the truth of the public statements made by the Sheriff. (*Id.* at pp. 13-14).

## III.  DISCUSSION

Fed. R. Civ. P. 26(a)(1)(A) imposes the duty upon a party to disclose the following to opposing counsel:

> (ii) a copy—of a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses …

Defendants claim they disclosed "documents related to Plaintiff's termination" as a category of documents pertinent to the reasons for Plaintiff's termination. (Doc. 164, p. 10). Clearly, the Euthanasia Form was not present in this document compilation. Defendants acknowledge in their response that Major Longo brought the Euthanasia

4

Form to the deposition, and defense counsel reviewed it on a break and realized "it was not the same as the animal disposition reports or animal intake reports that were previously produced" as part of the 10,000-page discovery production. (Doc. 164, pp. 3-4).

Plaintiff takes issue with Defendants' claim of ignorance regarding the existence of the Form at the time of their Initial Disclosures[3]; yet, there is no record evidence to support the premise that Defendant is being less than candid in this regard. Plaintiff argues that Defendant was required to supplement their Rule 26 disclosure upon learning of the existence of the original Euthanasia Form. (Doc. 161, p. 9). The duty to supplement one's Initial Disclosures is triggered by the disclosing party having learned "that in some material respect the disclosure . . . is incomplete or incorrect, and if the . . . corrective information has not otherwise been made known to the other parties during the discovery process or in writing." See Rule 26(e).

The parties agree that it was clear from the Euthanasia Form produced during Major Longo's deposition that portions had been whited out. In fact, on June 24, 2016, Plaintiff asked the defense to bring the original form to the deposition of Ms. Hagan because data fields showing "No Space" appear to have been altered. Thus, Plaintiff was aware that the copy was "incomplete" or possibly "incorrect," and she could have required Defendants to produce the original Euthanasia Form for inspection. Defendant correctly argues they were under no obligation to supplement their Initial Disclosure to identify the original form which Plaintiff already knew existed and was in possession of the defense.

---

[3] See Doc. 161, p. 9.

5

In response to Plaintiff's e-mail on June 24, 2016, the defense advised Plaintiff that she could question Ms. Hagan about the form during her deposition and could inspect the original Euthanasia Form following her deposition. The Defendants' response is dated five (5) days after Plaintiff's request and was sent at 5:04 p.m. (Doc. 161-5). Ms. Hagan's deposition was scheduled to commence the following morning. Clearly, defense counsel waited until the last moment to advise Plaintiff that the original would not be available for use at Ms. Hagan's deposition. While such sharp practice is frowned upon, Plaintiff could have canceled the deposition, served a notice of deposition *duces tecum*, and reset Ms. Hagan's deposition to allow Plaintiff's counsel to explore the original Euthanasia Form. Alternatively, Plaintiff could have postponed the deposition, inspected the original, and reset the deposition. Either alternative was possible between June 29, 2016 and the close of discovery on September 2, 2016. However, Plaintiff elected to go forward with Ms. Hagan's deposition absent the original form. It is undisputed that the original form was available for inspection following Ms. Hagan's deposition, and Plaintiff does not challenge Defendants' contention that she failed to inspect the original form prior to the close of discovery.

Plaintiff further argues that while she failed to inspect the original form between June 9, 2016—the date of Major Longo's deposition—and September 2, 2016—the close of discovery, Defendants were under an affirmative duty to examine the original form and alert Plaintiff that one could see the word "Behavior" under the data fields where "No Space" is written over the white out. The Court finds this takes the intent of Rule 26 too far. The Plaintiff and Defendants both learned of the existence of the Euthanasia Form on June 9, 2016. Both parties knew at that time the form appeared to have been altered

via white out. Defendant made the original form available for inspection within six (6) days of Plaintiff's request. *Arroyo Process Equipment, Inc. v. SPX Corporation*, No. 8:12-cv-1862, 2013 WL 12157584, at *1 (M.D. Fla. Jan. 16, 2013) (defendant complies with Rule 26 by making the document available for inspection). If the Plaintiff fails to take advantage of the offer to inspect the documents in Defendants' possession, she cannot be heard to complain that Defendant did not examine the document to discern its favorability to opposing counsel.

Plaintiff suggests that is strains credulity that defense counsel did not examine the original form following Major Longo's deposition and instead first saw the original on July 18, 2018. (Doc. 169, p. 1). Likewise, Plaintiff characterizes Defendants' July 13, 2018 offer to stipulate to the presence of white out on the original form in lieu of inspecting the document as evidence the defense knew the form was unfavorable to their theory of the case and attempted to conceal that from Plaintiff. (Doc. 161, pp. 6-7). Defendants' counsel asserts they did not immediately pursue viewing the original form but did question several witnesses about the form and possible alteration. (Doc. 164, p. 4). To be sure, one would expect experienced and even minimally curious counsel to promptly obtain and examine the original document when its veracity has been called into question, particularly where, as here, the document is helpful, if not critical, to the defense's case. One would also expect experience counsel to examine the original document before one's adversary inspects the document. Hence, the Court shares Plaintiff's astonishment that defense counsel first examined the original on July 18, 2018. There is no evidence, however, to suggest that defense counsel were not candid in their representation that

July 18, 2018 is the first time they laid eyes on the original Euthanasia Form, and the Court accepts their representation on this point.

As previously discussed, even if Defendants' attorneys were well aware on June 9, 2016 or in the days following that the original form revealed the word "Behavior" under the white out, Plaintiff knew the original existed and knew it had been modified with white out. All Plaintiff had to do was examine the document which could easily have been accomplished prior to September 2, 2016. The defense must make documents available to opposing counsel, but they are not tasked with separating the wheat from the chaff.

Because the Defendants had not seen the original Euthanasia Form at the time the Answer and Affirmative Defenses was filed, they cannot be held to that knowledge in hindsight and, accordingly, Rule 11(b) is inapplicable. To the extent Plaintiff contends Defendants were duty-bound to withdraw their Second and Third Defenses upon examination of the original Euthanasia Form (Doc. 161, pp. 14-16), the Court disagrees. The parties dispute whether the true reason for the euthanasia of the five (5) dogs was for behavioral issues or lack of space—both explanations appearing on the Euthanasia Form—defense counsel had no duty to withdraw the relevant defenses.

## IV. CONCLUSION

The existence of the Euthanasia Form, and the presence of white out masking some alteration, was well known to the parties by June 9, 2016. The Defendants promptly made the original form available to the Plaintiff, but the invitation to inspect the original was not acted upon prior to the close of discovery. Neither did Plaintiff bring the newly-discovered evidence to the attention of this Court when seeking the second amendment to the scheduling order, which motion was filed on June 16, 2016 (Doc. 50), seven (7)

days after Major Longo's deposition. While there is little doubt the Plaintiff would have preferred to question Ms. Hagan with the original Euthanasia Form, Plaintiff elected to go forward with the deposition absent the original form. Perhaps a motion to conduct a follow-up deposition utilizing the original form would have been favorably entertained by the Court, but no such request was made prior to the close of discovery or since.

Sanctions for discovery violations are serious matters and should not be lightly imposed. The record here is inadequate to support the relief requested by Plaintiff. Accordingly, Plaintiff's Motion for Sanctions (Doc. 161) is **DENIED.**

**DONE AND ORDERED** in Orlando, Florida on September 14, 2018.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties